Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the third day of our oral argument panel. Judge Brasher, Judge Anderson, and I are happy to welcome all of you here. We are going to take a break after the first case, which has a longer oral argument time given the number of cases and individuals involved. So we will begin with our first case, take a break, and then continue with the last three. We'll probably take a 10-minute break after our first case. You have a clock on the corner of your Zoom screen and that will tell you how you're doing with your time. So when you see that green number starting to get close to one or zero, begin summing up and bringing your remarks to a close. If we take you beyond your time, then don't worry, just keep answering questions as long as we'll have you. With that, we are ready to begin. Our first case involves actually 10 consolidated cases. I'm just going to list the lead case and we'll begin then. Our lead case is number 18-12569, United States v. Mario Sours. And I think, Mr. Winchester, you've got 10 minutes, Ms. Wade has 10 minutes plus the rebuttal time, and Mr. Harvey has 5 minutes, and then we've got Ms. Virch for the government with all the time. So with that, we are ready to begin. And who's going first, Ms. Wade or Mr. Winchester? I will be, Your Honor. Okay. If you could just let us know which issues you're going to be addressing before you start, if you'd split up the issues that way, and that'll help us sort of keep the argument on track. Yes, Your Honor. I'll be ready. May it please the court, Your Honors. Thank you for having us here this morning. My name is Kyle Winchester, and I, together with Ms. Caitlin Wade and Mr. Bruce Harvey, we have the privilege of representing Mario Dimitri Sours in a consolidated appellant in this case. Your Honor, this appeal raises three challenges to the district court's order denying the joint motion to suppress intercepted communications. Consistent with those three challenges we've provided our presentation, I will first explain why the wiretaps in this case were never sealed. Ms. Wade will dedicate her presentation to explaining why the government below failed to provide a satisfactory explanation for any sealing delay that this court may find, and Mr. Bruce Harvey will address the extraterritorial interception issue. Sealing, Your Honor, the seal provided by Title 18, Chapter 2518, Subsection 8A, is an essential prophylactic requirement to the wiretapping process. In United States v. Ojeda-Rios, the Supreme Court explained that the function of 8A and the seal was prophylactic, and the court in that case uses the word opportunity twice to emphasize that the purpose is to prevent the government's opportunity for alterations or tampering with the original Blu-ray discs. That purpose was not fulfilled in this case, and the wiretaps were not sealed for two reasons. First, there was never a judicial sealing order entered to seal the wiretaps after they were presented to the state court judge. The second reason is, as the district court found, the government maintained access to the original recordings throughout the process of this case. Can I ask you a question about the first point you made? Where is the requirement for a separate sealing order? Where does that requirement come from? The statute does not use the word sealing order, but it does use the word order three separate times, and to give meaning to the third time that the statute reference used the word order in connection with custody, it implies a second judicial action that occurs after authorization has expired, and that's why this statute should be construed to require the judicial sealing order. The reason being that custody and presenting the original recordings to the judge to be so when the statute uses the word order the third time, it cannot refer back to the first time you did use the word order in connection with authorization and an extension. Yeah, so I understand that argument. Here's, I guess, the judge here signed his name on, if I understand correctly, he signed his name on the envelope and directed, I guess orally, that the clerk keep it Why does he have to enter sort of a paper order to do that? Why isn't just the fact that he wrote his name on it, closed up the envelope, gave it to the clerk, with the idea that it would be sealed, why isn't that sufficient? Because without the judicial sealing order, the government can, would be permitted to do what it did in this case, which is direct the sealing and the unsealing of the evidence and the authorization orders. The statute uses the phrase sealed under his direction, but functionally, the evidence from the evidentiary hearing shows that these documents were sealed and unsealed more so under the directions of state prosecutors because the clerk, I think, is the most important witness from the evidentiary hearing because the clerk clearly states that I did what the district attorney told me to do. I was contacted by the state prosecutor. He told me to hold on to something that would be coming down the pipeline and to keep it, that it would be under seal, but then at a separate point in time, the same district attorney instructed the clerk that the file was now open and the sealed documents were placed into the open file and it's through that unilateral ex parte communication that the government was able to control the sealing and the unsealing process. The purpose of the order is to ensure that the judge acts as the and in this case, that wasn't true and so the construing the statute to require the subsequent judicial sealing order would be consistent with the purpose of the seal as construed by Ojeda-Rios and I'll note that the Third Circuit in Carson is one of the courts that has expressly, it's not a holding, but it is the use of express language that the separate sealing order is required by the statute. And I'll say, Carson, it's discussed throughout the briefs, but the site is 969 Federal 2nd and the, excuse me, the pin site to the relevant language is 1494 and the court in that case says, as a practical matter, more time is needed to secure an extension than to obtain the sealing order statute requires at the end of surveillance at any particular site. So while that's not an express holding that the statute requires that, it is an endorsement of the construction that we're proposing here. And I think the danger here is that regardless of whether this court chooses to affirmatively construe the statute to matter of fact, the factual basis for what happened here could not be construed as a judicial sealing. So even if the court says there are ways to judicially seal the original recording without the separate order, here, functionally, practically, the wiretaps were not sealed because the government had access to the recordings the entire time. And that's the harm that section 8A is designed to prevent. It is designed to prevent circumstances that could result in government tampering. So what is the evidence that supports your assertion that the prosecutor had ready access to the tapes? Tell me who testified and the substance of their testimony. The witness, your honor, is Timothy Quick, who was the defense witness called at the evidentiary hearing. And his testimony was that he made his decision about where to sort this and whether to make them publicly available or to not make them publicly available based on oral communications with the state prosecutor. But didn't the prosecutor tell him keep them under seal, though? Yes, yes, your honor. He did say that. But let me I want to go back to Carson because you put a lot of sort of emphasis on Carson today. And I guess I would just say I didn't really read Carson the way that you're suggesting. So maybe I'm missing something. I thought Carson said here's a quote I thought was relevant from Carson. Other than gathering the tapes, putting them in boxes and taking the tapes to the supervising judge, quote, no other necessary steps to sealing, end quote. And also said that an AUSA, quote, can obtain a sealing order simply by presenting the appropriate papers and tapes to the supervising judge, end quote. What explain to me what I'm what I'm missing about Carson? Well, I think Carson is helpful to the defense here in three different ways. The first way is by the mention of the construction of statute requiring the order. The second way is related to more of the second issue because it's factually distinguishable in that in the division that the court approved admitting the recording, the evidence was that unlike Agent Bridges, the prosecutor reviewed the statute. Unlike Agent Bridges, the prosecutor reviewed the case law 2518. And unlike Agent Bridges, the prosecutor had experience in prior investigations like this. So you're talking about the timing issue when you're talking about the reviewing. That's the timing. Right. And so I thought, but I think the, I mean, it's undoubtedly true what your honor has quoted about the practicality of sealing the disks. But the problem is without the order, without some, then the clerk, the clerk could be directed by the government access here that are not the court. The sealing order is required to make sure that the judge access operates as the impartial custodian, not the government. I'll reserve the remainder of my time if there are no questions and allow Ms. Wade to begin her presentation. All right. Thank you very much, Mr. Winchester. Ms. Wade. Good morning. May it please the court. I'll focus on the delay issue today. And the delay issue brings to mind the old adage, the ignorance of the law is no excuse. And here the government argues that the agent's ignorance as to the immediate sealing deadline not only provides an excuse, but in fact provides what they deem a satisfactory explanation for the delay in sealing. We ask the court to reject that argument and to find that a mistake about a basic legal principle cannot serve as a satisfactory reason for the failure to meet the ceiling deadline of section 2518. What, what, I mean, there, before we even get to the question of whether or not there's been a satisfactory explanation, we've got to figure out a couple of things, I think, Ms. Wade, and I'll ask your colleague on the other side the same or similar question. So the first threshold question is what standard of review do we use to analyze a district court's determination on a satisfactory explanation? And the second one is what sort of a substantive standard do we come up with or announce to determine what constitutes a satisfactory explanation? Could you walk me through those two before you dive into the merits of this case? Of course, Your Honor. So to begin with the standard of review, as we stated in our brief, we believe that the correct standard of review when the court is analyzing a denial of a motion to suppress is clear error as to the factual findings of the district court, but de in my brief, when I discussed the standard of review is the Torres case, and that was an 11th Circuit case where specifically the court was looking at the denial of a motion to suppress wiretaps for Title III. And that, to my knowledge, that is in the majority. I think that there are two other circuits that have found a different standard of review as argued by the government. The majority of circuits have addressed this issue because it is a mixed issue of law and fact through both a de novo standard for the initial question of law and then clear error for the remainder of the questions regarding the facts. Okay. What about the substantive standard? So the substantive standard, the court, as you correctly stated, has not determined a the mistake that was addressed in the district court was a mistake of law. And we would argue that when there's a mistake of clearly law, as guided by the Supreme Court in the Ohea-Rios case, that the court would look to whether or not that mistake is objectively reasonable. And here we would argue that it's simply not objectively reasonable to make the mistake that the agent did. And following the guidance of the... You would not have us say anything further about satisfactory explanation in other circumstances not involving the reason in this case. For example, there are cases in other circuits in which prosecutors or agents to use the line from one of the opinions got their wires mixed up, got signals crossed, one of them thought another was going to do something, responsibility sort of was up in the air, and there was a delay. You wouldn't have us opine on those issues here. I don't think that the court has to reach those issues because there were two reasons that were put forth in the district court to satisfy the mistake about the law. This misunderstanding that there was actually 10 days to return these tapes for sealing rather than the one to two days that this court has found. And then there's a secondary explanation about some logistical issues and the fact that the agent might have believed he actually had to complete transcripts and do copies of these tapes in advance or else he wouldn't be able to do those later once the tax were sealed. We would argue that that was not, in fact, the actual reason for the delay because Agent Bridges testified that had he had the proper understanding of the sealing deadline, having it known it was one to two days, he would have made the returns within those one to two days. This is not a question of him not being able to, as maybe has been found by other courts where there were other delays that could not have been avoided. The real reason for the delay here was a misunderstanding of the law. So we don't think that the court has to get into a number of factors that would encompass any possible set of circumstances in the future. But isn't the issue here that the judge specifically said this is the time when I want you to return the tapes? He said in the order that granted the wiretap is said 10 days. So I guess, so the statute says that the return, the sealing is supposed to be under the issuing court's directions. How, I mean, how is it even late, I guess, is my point, if it's doing it what the judge told him to do? Well, I would argue that under the district court's direction does not mean that other parts of Section 2518 can be violated. It doesn't change the immediacy standard. And what's been determined to be immediately in this circuit is one to two days. And I think that the standard that was in the order came from these go-bys that the agent used. And the only, I think there was some clarification about whether it was 40 days or 10 days, but those are the same standard because the maximum length of the wiretap order would have been 10 days. So whether it be 40 days from the issuance of the order or 10 days after the end of the order, that was still a 10-day standard, which is erroneous. Yeah, but I guess, I don't know that that is responsive because the statute says that the return is supposed to be immediately after the wiretap order expires. I can't, I can't remember the exact words, but that's the gist of it. But the order here, the wiretap order by its own term said you've got 40 days to do it. And so I guess, I see the, I mean the immediacy issue arises when the judge says you've got 30 days to do the wiretap and then doesn't specify when the sealing has to occur. Why would the judge do that? Well, as I said before, I don't think that the state court judge had the authority in an order to, to give the, to give five times the length, if one to two days is the length that this court has said is a functional meaning for immediately, the state court judge doesn't have the authority to lengthen that by five times simply by putting it in order. Why not? Because the statutory requirements of 2518 say immediately that has been made clear by the court and just because there is an order, and the order, the reasons that it's 10 days. Here's what the statute says, okay, it says immediately upon the expiration of the period of the order or extensions thereof, such recordings shall be made available to the court. So what about that says that the judge can't issue a direction about the time in which he wants it to be sealed? I think even the, the order of the statute that you just read, so that they have to be made available immediately and then sealed under the judge's direction. These were not made available immediately. They were not made available within the one to two day timeframe. And the 10 day mistake of law came from these go-bys that the agent relied on. He was the one that brought that mistake of law into the equation and brought that to the judge. So I just don't think that simply because the judge signs an order that has a 10 day timeframe that that can circumvent the immediacy requirement of this federal law. Let me, let me give you, let me give you another sort of question about that. Let's say the judge said, I actually, you know, the 11th circuit says immediately is like one to two days. I don't like that standard. I think it should be within 12 hours after the end of the, end of your last wire tab. And the government then just say, you know what, we don't care what that judge has said. We're just going to do one to two days. I think that's the core standard, I guess. I apologize. I couldn't hear that. I was trying to clarify the question in case it was, I mean, could the judge reduce the amount of time? I think that the judge could reduce the amount of time and expect those wire tab recordings to be returned within that time. But when a court is making a determination about whether or not failure to meet that judge's standard would require suppression, I think one to two day standard could still be utilized. The Georgia Supreme Court has come up with the same general definition, right? Yes, Judge, I think that their guidance was based on the 11th circuit reasoning and with the one to two day standard. You indicate in your brief that the government conceded in the district court that there was a seven day delay. Yes, Judge. I think that my time is expiring. I guess the question that I had, if I could, is it seems to me there's a difference, and maybe I'm wrong about this, in the reasonableness of an agent just saying, I'm going to take 10 days after this wire tab order expires versus what happened here where the judge in the order said, you get 10 days after it expires. Is there no distinction that we can draw there between an agent making that decision on his own, which maybe that's not reasonable, and we should say that's not reasonable, versus an agent saying, the judge in the order told me I had 10 days, and that's why I did it. What do you think about that? Well, I think that it can't be looked at as a judge making that determination on the order in a vacuum. The judge made that determination in the order based on what was presented to him by the agent, and what was presented to him by the agent included this erroneous standard that he would have 10 days. So all of this began with the agent's reliance on go-by's, failure to even read the statute, which he acknowledged. He said he didn't read the statute, and he also said that he understood the term immediately not to mean 10 days. So had he read the word immediately in the statute, he could have known at a minimum to take a second look at this standard. Yeah, but I mean, who do we expect to know the law, enforce the law, and protect the defendant's rights in a proceeding like this? It's not the government, right? It's the judge who's supposed to be authorizing the wiretapping. That seems odd to me to say that the problem here is that the agent made an error of law and not that the judge did, if one was made. But the issue is that the statute requires this immediate sealing, requires it by the agent, by the judge, by everyone. The statutory requirement is that it has to be immediate sealing, and there's its own exclusionary provision within Title III that says when the standard is not followed, that there's a provision for exclusion, and that's the appropriate remedy. I have a couple of questions also, Judge Jordan, if I may. Of course. Suppose, just for the purposes of this question, that there was an error of law, a little different approach than Judge Brescia, assume there was an error of law, but it was the judge's error. Would the exclusionary rule apply? I think it's important to discuss that we're focusing on the exclusionary rule that's built into Title III, a judicially created exclusionary rule related to the Fourth Amendment. So I think that there's nothing within this statute that says it somehow only applies to agent mistakes. But the requirements for the statute that allows these interceptions to begin with is this immediate sealing, and without that immediate sealing or a satisfactory explanation for it, then the exclusionary rule of this statute would apply. I understand your answer, but in the Fourth Amendment context, is there any law that the exclusionary rule applies when the error is that of the judge as opposed to the law enforcement people? I mean, I think in the Fourth Amendment context that the judge has abandoned his role as an impartial judge, but like I said, we don't believe that the Fourth Amendment exclusionary rule applies here. It hasn't been argued by the government. I'm talking about are there any cases which we could look to by analogy that hold an error of law by the judge as opposed to law enforcement triggers the exclusionary rule in the Fourth Amendment context? I'm not aware of anyone that would be analogous in this case. I haven't researched that, and I gather maybe you have not either. Is that right? Well, I don't believe that the Fourth Amendment exclusionary rule applies, so I don't think there are any analogous cases to this situation. But that's not my question. My question is, you have not researched in the Fourth Amendment context whether or not an error of law by the judge triggers exclusion as opposed to errors by law enforcement. You haven't researched that, apparently. Is that right? I have not researched it to the extent that they're comfortable in this context. Okay. The other question is this. Assume, for the purposes of this argument, that there is an error of law here by the judge or the prosecutor, and assume that the exclusionary rule would ordinarily would apply anyway. The statute says satisfactory explanation. It is true that our Matthews decision throws at least some doubt on whether or not it was objectively reasonable to think about 10 days as opposed to two. But Matthews holds only that two days is what immediate means. What the statute says is even if you violate the immediate, it's still no exclusion, no suppression unless or if there is a satisfactory explanation. Why is it not a satisfactory explanation that this prosecutor and this judge relied upon the go-bys, and lawyers and judges routinely rely on tried and true forms? We are not required, and we don't ordinarily do as a matter of fact, reinvent the wheel every time we have a new warrant to apply for. Why is that not a reasonable explanation? I think it's not a reasonable explanation. I think the most important part of your question focuses on the district attorney because he was a part of this application process, but we didn't hear from him at the district court about what he would have done to research the law. So I agree that it's a regular practice for attorneys to rely on go-bys, but I also think it's a regular practice for attorneys to make sure that the relevant law that's cited in those go-bys is still valid and that it's the correct legal standard. So we see in the Carson case that's already been mentioned by Mr. Winchester, a discussion of this requirement that when the party that caused the delay is going to rely on a mistake of law to provide a satisfactory explanation for delay, that not only must that mistake be reasonable, but there is a standard that they acted as a reasonably prudent, in a reasonably prudent manner, excuse me, to research the relevant legal standard. And so the district court may mention of the fact that this case might have been resolved differently had the government official been a lawyer, but there was a lawyer involved in this and we heard nothing about what efforts that lawyer made to do the duty that was required, which is to do some basic legal research. The district court found that minimal legal research would have informed a lawyer that a 10-day delay is impermissible. So here, the reason that this mistake is unreasonable is because there's no evidence that the lawyer that was involved to some extent did any research whatsoever because it seems that even basic research would have failed. Judge Jordan, I apologize. I took so much time. I think she's answered my question. No apologies ever needed. No problem at all. Okay, Ms. Wade, thank you very much. And so we will turn to Mr. Harvey. And I still get five minutes. I don't know whether I'm going to need it since we've gone so far over. You've got 30 seconds. Great, great. Everybody else is wrong. I'm right. Rule for us. How's that? I'm going to circle back to a little bit of what Ms. Wade said because we're dealing here with jurisdiction, at least my portion of this argument is dealing with jurisdiction, which is and we're talking about a state wiretap issued under state special statutory provisions, which incorporates some aspects of the federal wiretap law. However, it is a state statutory provision. And we are not in any position to expand the jurisdiction, of course, of a state court. And we're not in any position to expand the state statutory provision, which provides only that a warrant will have statewide application and interception of communications shall be permitted in any location in the state. The wiretap, the state wiretap order in this monitor and electronically intercept transmissions to and from the target telephone during any out of state travels clearly beyond the statutory jurisdiction of the state court. Notwithstanding any interception, point of interception logic, a state court has no authority to issue a warrant authorizing interception in some other states. What is the basis for that argument? It's not state law, right? Because Georgia's state law, I mean, maybe I'm wrong about this, but I thought that the Georgia Supreme Court had said that Georgia state courts could issue warrants like this. No, no. They said they could issue warrants authorizing interception statewide. They didn't say we're authorizing you to intercept conversations that may occur any place else in the United States. And I don't think a state court has the authority to do that. Let me give you an example. Before you give the example, I'm trying to get my head around exactly what the argument is. So a phone call is made from, let's say we're talking about the old world and we're talking about a landline, okay? So let's say that the wiretap is authorized for calls made from and made to a landline located in Georgia, okay? There is a phone call that comes from North Carolina into that landline. Does that phone call come within your argument or not? Yes. Sure. So you're saying that the only thing you can authorize are intrastate calls, right? Well, otherwise a state court has interstate jurisdiction, which it simply can't do. That's beyond its jurisdiction. And I guess my question is, what's the law that tells us that? Is it state law? Do we look at the state statute or is there some federal principle that you're trying to- No, no, no. No, we can look to the state statute. And you tell me, you've been in the state system. You tell me how it is that a Georgia court can authorize the interception of a citizen of another state. Well, Alabama doesn't allow wiretaps at all. Well, I mean, Alabama, that's an outlier anyhow. So here's the point I guess I'm trying to figure out. If this is a question of does the state statute allow it, then it's a state law question. If the point is that there's some federalism principle, then that's a federal question. I'm just trying to figure out where this limitation comes from. Do we look at the state statute to interpret that or do we look somewhere else to figure out? No, I think you have to look to the state statute because by the way, there were no T3s in this case. There were no federal wiretaps. In other cases that the government has discussed, there was a state wiretap and then they made the decision to get a T3. So there was a combined analysis. In this case, you were looking at the jurisdiction of the state, just like the state can't issue a subpoena to somebody in North Carolina. That's my time. Thanks. Wait, I have a question, Mr. Harvey. So if that's the case, then if you are right about everything you've said, the suppression remedy is not suppression of the entire wiretap. It is the suppression of calls that violate your theory about territoriality, right? Oh, wrong. Why is that? Because remember, we're not dealing with Fourth Amendment issues here. We're dealing with special statutory provisions. If the order itself is void ab initio because it's extraterritorial and without the jurisdiction of the court, then suppression is mandatory under the statutory provisions in the statutory scheme. So if this wiretap has not resulted in any out-of-state calls, would the order be void ab initio because it authorized such calls? Yes, absolutely. So you're asking for a suppression remedy that goes beyond the harm you've identified? No, I'm asking for a suppression remedy that's identified by the statute. And this court can't rewrite or interpret a Georgia statute to rewrite it when that's a legislative function. And I think you can say, boy, we don't like the way this might result. But you can't say, gee, that's a legislative remedy. That's a legislative fix. It's certainly not an 11th Circuit fix to determine the exclusionary rule under a Georgia statute. Now, you may want to do that. So let me ask you, if I could just ask you one more question on this. So the Georgia Supreme Court's leading case on this is a Longot? Yeah, Longot or Longot. Longot. That's my case. That was my case. Okay. That's why I got the jurisdiction argument in this one. All right. So it was my understanding in that case is that the Georgia Supreme Court said that an interception occurs either where the phone is or where the police are listening from. Yeah, that's the posterior. Okay. So if the police were listening to the calls from inside Georgia, then didn't the interception occur inside Georgia? Well, I think the definition of where the interception is begs the question of the jurisdictional aspect of authorizing interceptions from without the state. That begs the question, what if the two parties were both in California and a phone call was made from one party to another in California because people may have traveled from Georgia to California? And that phone call, because there was a tap on one of the phone calls, was intercepted in Georgia. But the conversations are totally outside the state of Georgia. So essentially, we were authorizing unlimited, unlimited interceptions in all 50 states and maybe in every country in the United States of America in contradiction to the specific jurisdiction of the underlying judge. Now, a legislative remedy can say, hey, we authorize, if it's intercepted in Georgia, we authorize the interception of citizens of any state or country in the United States. And that would be a subject for another challenge. But you can't write the statute. You can't construe a state statutory provision to say it authorizes interception of citizens of another state that are located in another state. Okay, one more hypothetical, Mr. Harvey. Oh, you're killing me. Hopefully not successfully. Well, I don't know. A wiretap authorizes the interception of phone calls to and from two Georgia cell phones owned and operated or leased by Georgia citizens. That's all it authorizes. Those two Georgia on the phone. And the state wiretap order lawfully allow interception of those calls in Florida. I think so. Why? Even though the interception is outside of the state? Yeah, because I think that I mean, that changes the factual basis of the hypothetical. Because I know. But we've got we have got a statutory. Well, maybe I'll change my answer. The answer then would be no. Because it can't. It can't. The state unless with express authority can't operate extraterritorially. And the order if it's an order that allows out of state interception is void ab initio. And if it's void ab initio, it's subject to the exclusionary provisions of the Georgia statute, as well as well. All right, last last one. Authorization to wiretap a Georgia phone landline or cell and a person from Tennessee with a Tennessee phone comes into Georgia and makes a phone call from within Georgia on his Tennessee number to the Georgia intercept. Can that call be intercepted? Yeah, because I think that that is all that that the factual activity there is all within the state of Georgia. And then it would be within the jurisdiction of the state of Georgia. I mean, we're talking about a cabined jurisdiction. And that's why I started by saying principles of federalism under underlie this whole argument, because we can't bootstrap a unified statute that applies everywhere in the United States to a limited jurisdiction of a state court authorized by state legislature. So that's, that's, that's my argument there. All right. Thank you very much, Mr. Harvey. We appreciate it. Thank you. And seven minutes and 20 seconds. Yeah, I mean, and remember, you gotta earn you have to earn your fee. Yeah, you remember everything. Everything the government says is wrong. Remember that before you hear from them. I will go to sleep. Okay. So, Ms. Birch, you're on. Thank you, Your Honor. May it please the court, Tippi Birch for the United States. This court should affirm the denial of defendant's motions to suppress the wiretap recordings for three reasons. First, the original wiretap recordings were sealed in accordance with the statutory requirements. Second, while the recordings were not immediately sealed, as this court has defined the term immediate, the government has provided a satisfactory explanation for the delay in sealing here. And third, the wiretap authorization orders properly authorized wiretaps for which the listening post was within the jurisdiction of the issuing court. And with the court's indulgence, I'll try to address the issues in that order. And if I run out of time, I'll plan to rest on our briefs with respect to the questions the court has. So, as to the first issue, the original wiretap recordings were properly sealed. So, the defendant's arguments that the wiretap recordings were not properly sealed because there was not a separate written order or because the clerk didn't apply some file stamp are simply without merit. They seek to import the preferred practices in some jurisdictions and convert those practices into statutory requirements. And to be clear, it's not the government's position that these preferred practices, the preferred practice specifically of having a written order and file stamping, it's not our position that those should no longer be preferred practices or that those should be abandoned. Those are preferable, but they're not requirements. They simply are not required by the statute. Let's take a look at what the statute does require. So, 18 U.S.C. Section 2518.8a provides as follows. Immediately upon the expiration of the period of the order or extension thereof, such recordings shall be made available to the judge issuing such order, sealed under his direction, and the custody of the recordings shall be wherever the judge orders. So, it basically sets forth three things in addition to the immediacy of requirement. So, those are all met here. The recordings here were made available to the judge. They were sealed under his direction, and the custody of the recordings was where the judge ordered. Not only does the statute not require a separate written order sealing the wiretaps, it doesn't even mention a written order. It does use the third use of the word order is in accordance with rather custody of the recording shall be wherever the judge orders. The statute also doesn't make any mention of or require any file stamping by the clerk. I realize that was not discussed today but was raised in the brief. The statute simply requires that the custody be where the judge orders it to be. It doesn't require any particular procedure. It doesn't require the file stamp. It doesn't require that it be maintained within a particular file by the clerk. The statute wisely allows for flexibility in the procedure for sealing the wiretaps. That is wise because state courts and even federal district courts and their respective clerk's offices vary in the particulars of their operation. What is important is that you meet the requirements of the statute, and here those are met. This court should not read any particular procedural requirements into the statute. They simply aren't there. The wiretaps here, the wiretap recordings were sealed and compliant. They were presented to the judge. They were presented to the judge, and the judge initialed the envelope in which they were sealed. They were sealed under his direction and then placed with the clerk according to his direction. Notably, the recordings were both physically sealed such that they were tamper proof, and they were also inaccessible to the public without having a court order. Again, although that might not be the best practice, it might not be the practice that everyone here is accustomed to seeing. It fully complied with both the letter and the spirit of the statute, and we can't read in additional requirements. With respect to the defendant's contention that the government had unlimited access to the recordings, the record does not support that. What happened here, there certainly was interaction between the district attorney and clerk to be sure, but the record shows that the recordings were sealed, initialed by the judge. They were deposited with the clerk. The clerk was told that they were sealed and were to be kept accordingly. The clerk did that. Then when others, aside from the first the clerk heard, is that about wanting access was from defense counsel. When that happened, here is what the clerk had to say about it. This is in the record. It's from case 216CR10 to doc 171, which is volume two of a transcript on the hearing on the motions of press, specifically the June 30th, 2016. This is a transcript. The clerk said, I provided them to them when the judge told me they were to be opened. Further reading of the record, including some of the portions of the record that the clerk provided, the recordings were not publicly accessible, but did provide access after the judge ordered that they were allowed to be accessed. There was some interaction with both the district attorney and defense counsel following the judge's order that they were allowed to be accessed. Specifically, the clerk handed the information over to the district attorney in the presence of defense counsel and said, make sure that we are disclosing the correct thing that the judge has allowed to be unsealed here. There was some interaction there, but defense counsel representing some of the defendants was involved in that, and that was the entire reason for the access to those which had previously been kept under seal and not publicly accessible. Did the magistrate judge make any finding of fact in this regard? Your Honor, I believe that he might have, and honestly, I apologize. I would have to refresh my recollection about that. I don't know off the top of my head exactly what he found on that point. Was that argument presented to the magistrate judge? I believe so. Yes, this is all the transcripts from this hearing was an exhibit in the hearing before the magistrate judge such that he had access to all of this information. All of that was presented in consideration, including the clerk's testimony, including for consideration in the magistrate judge's decision here, which was then, of course, adopted by the district court. With respect to the delay, the government has provided a satisfactory explanation of the delay in sealing the wiretaps. The government concedes that the wiretaps recordings were not sealed immediately as this court has defined it within the one to two days. I will note that an interesting question was raised when defense counsel was arguing about whether or not the language in the order requiring the sealing within 10 days might define it, define that immediate term for purposes of this case. That's an interesting question that, to be honest, I had not previously considered. I think that's a distinct possibility. Even if it doesn't, the government has still provided a satisfactory explanation for what would be considered a delay here if we're looking at the one to two days as an immediacy requirement. Let me ask you about that satisfactory explanation. To me, it seems like you're pointing to two different things. I just want to see if I understand you right. On the one hand, it seems like you're pointing to the forms that the agent used, the agents, you know, whether that was sort of reasonable for him to use those forms. And on the other hand, it seems like you're pointing to the judge, the judge's order itself. Which of those two things in your mind is sort of the key to say it's a satisfactory explanation? If, for example, if we didn't have the judge's order with the fact that the agent used the forms, would that be enough in and of itself? Your Honor, I think that that would be enough here. I think that the fact that it was in the judge's order lends additional support. I can't say that I, you know, want to consider them separately here because we do have them both here. But I think that under, that if it were not, if the judge's order perhaps had been silent on that point, I still think that under the circumstances, we would be within the realm of a satisfactory explanation. And now that Judge... Burch, in this case, I mean, like the district judge, I am very troubled about the delay issue. And I'm not sure I know what the answer is, but there are a lot of things in this case that are very, very concerning. I mean, you have an agent who purportedly was told about the immediacy requirement at a training session, even though there's some allusion in the record to him not having seen the page of the materials that supposedly covered that. But the agent who provided the affidavit and the application didn't do any research, didn't ask anybody, didn't get any legal support, and gives the judge something that you conceded below led to delay. Why is that objectively reasonable? I think it's reasonable under the circumstances because the agent, as he testified, was relying on what he understood, was relying on JOE 5. I do think that is a very common practice to use forms. You're correct. The record shows that he did not go do any additional legal research on the issue. He did rely on others. And I think that the record also shows, to a slightly different part of this point, that he genuinely believed that the 10 days was the record set amount of time. I know, but it's not subjective good faith that governs. It's subjective reasonableness, right? And that's a very different standard than whether or not this particular agent believed in his heart of hearts that he was doing the right thing. I agree. That is not the standard. I do think that it is a factor that is to be considered. How can that be? How can that be? I mean, for example, in other scenarios where we look at objective reasonableness, Fourth Amendment, for example, qualified immunity, we do not look at the subjective intent or knowledge of the agent who is accused of doing something wrong. Why should it be important here if it's not used in those other scenarios? Well, for example, I think it is a factor in that if the agent had not genuinely believed this, for example, I think that it would then be impossible to establish objective reasonableness. I think if there were evidence contrary to what we have here, if there were evidence like that. I also think that if we look at what this other circuit has considered, your honor was right. This court has not yet had the opportunity to address either the standard or review to be applied here. And we would contend that it's clear error and that the Seventh Circuit's opinion is the most well-reasoned on this point. And I'm happy to discuss that further. But in terms of the standards for evaluating, one of the things that courts, other circuits have considered is, basically, I think the magistrate court here did a good job summarizing some of those factors. But one of those factors is whether there is any evidence that the government delayed to gain some sort of tactical advantage over the defendant, you know, to be able to tamper with the recordings, whether there was any action by the government in bad faith. So I do think that's a factor here. And here, that factor, you know, would, of course, weigh in favor of finding this to be objectively reasonable. If we look at the other factors that those courts have considered, those... Before you do that, I'm sorry. I want to make sure I ask you this other question. I apologize for interrupting your stream of thought. But in terms of the standard of review, isn't the determination of whether or not a certain set of facts amounts to a satisfactory explanation similar to figuring out whether or not a certain set of facts amounts to reasonableness under the Fourth Amendment? And aren't those questions of law? So you give clear error review to the underlying historical facts, but reasonableness is a question of law under the Fourth Amendment. Why isn't a satisfactory explanation also a question of law once you give clear error deference to the underlying facts? Your Honor, I'll start by saying under either standard we think it's met here in this case. So I'll start from that premise. But the Seventh Circuit, I think, did the best job addressing it. Quite frankly, the other circuits who have considered the question, who have applied that mixed standard, have not really provided any that the Eighth and Second and First had not really provided their reasoning. And then went on to adopt the minority position and noted that the question of what is a satisfactory explanation is almost entirely fact-specific rather than being subject to a sort of rule that the appellate court might lay down. So our position would be that this is just extremely factual, factually specific inquiry such that that is why the clear error standard should apply. But doesn't it require a legal test? And if it doesn't require the application, whatever the legal test is, doesn't it require application of a legal test to the fact? And doesn't that make it a mixed question? Your Honor, I think it's subject to debate as to that's more a straight question of fact or whether or not it's a mixed question. And obviously, circuit courts have gone both ways on the question and this court has yet to address it. Our position is that the clear error standard is the more appropriate standard, but that under either standard in this particular case, that the court need not reach the question because in this particular case, under either standard, the government has shown a satisfactory explanation for the delay. Okay, thank you very much. Absolutely. My job is most importantly to answer your question. In looking at the factors that other courts have considered in analyzing whether or not there has been a satisfactory explanation with, of course, many of those courts upon having adopted that de novo standard of review, they look at the following factors. The magistrate judge in this case did a good job summarizing them. Sort of first looking at that reason for delay to include the plausibility and believability of the reason for that delay. Whether the record shows that's the actual reason for the delay. So that being sort of the first of the factors. Second being whether or not the reason is objectively reasonable and really probably the heart of the matter in this case is that question. Third, the length of the delay. Fourth, whether there's any evidence that the government, you know, was trying to gain some sort of tactical advantage or operating in good faith, as I had mentioned, or operating as I had mentioned earlier. So in looking at that first factor, the reason for delay, here the record is clear, you know, about the reason for delay. We don't have a situation like the Supreme Court faced in Ojeda-Rios where essentially a new reason for the delay was presented for the first time on appeal, which then of course, you know, would cause all sorts of problems, including, you know, undermining the believability and plausibility of that reason. Here the testimony and the record are very clear that Agent Bridges was mistaken about the amount of time that was his mistake was based on his reliance on the go-by, that he also had a mistaken belief about the need to transcribe the recording that factored in to his understanding of the 10 days. There really is not, the reason for the delay here has been consistent the whole time and there's really not any question, I would say, about the reasons for the delay. There is one only objectable, sort of, I think you're right, that the objective reasonableness is sort of the one disputed issue here. Where did the 10, where did the 10 days come from? I mean, I know it came from these go-bys, but I just kind of poked around a little bit and I found other district court cases in Georgia, state court cases in Georgia, they have the 10-day thing as well. So there's something going on in Georgia that has the 10 days and where does it entirely clear as to where the 10-day understanding came from? I believe it might have come from an old Georgia legal requirement about 10 days, but I will say that I'm surmising that. I missed what you said, an old Georgia what? A former Georgia legal requirement about 10 days. Um, that is, um, my, that is my speculation about where the 10 days came from. I don't think the record gives us clear information outside of that the 10 days was in the go-by, that the 10 days was in and it, you know, ended up in the order. I don't think the record. All we know, just and correct me if I'm wrong, so all we know is that the 10 days was in the go-by the agent used. We don't know why the 10 days was in the go-by the agent used. I think that that's right. I think that's right, your honor. And here, um, and does the record show that, uh, that, uh, the use of 10 days was not uncommon in, in Georgia? I don't know that the record, um, speaks to that point. Um, I think the record shows us that the 10 days was in the go-by, um, that, you know, that was Agent Bridges' understanding of what it was. I don't think that the record speaks to, um, either sort of where it originally came from or how common that, um, misunderstanding is. There's clearly an inference that it was common in this particular judicial district, isn't any of that? I think that that's correct, but, and I think that's exactly right that it's an inference. So, um, I think that, you know, it's not entirely clear exactly how we got there, but certainly, you know, that was his understanding, um, from the go-by as well as in the order. So, in light of, uh, in light of Matthew's two days, uh, how can 10 days or nine, I think it was here, uh, be objectively reasonable? Your Honor, nine days can be objectively reasonable because, um, the perfection is not required here. I mean, that's what OJDA Rios tells us is that we have to look at, um, you know, was this, is this a satisfactory explanation? Is what the government is telling us, you know, a good enough reason for why it was delayed? It doesn't have to, you know, meet, check the box exactly on one to two days, but when we don't, we have to come with a satisfactory explanation to explain why. And here, the, if we look at these factors that other circuits have considered, um, which do include the length of delay, I mean, here, that, the, the explanation is satisfactory. Delays considerably longer. With respect to the second, uh, reason that Bridges, with respect to the second reason that Bridges gave, namely that the need to, uh, uh, prepare transcripts and copies, uh, under the understanding that there would not be a copy, uh, uh, in, in the computer center, uh, after the sealing was done. Uh, why is that reasonable when, uh, the agent clearly could have made his copies, uh, readily and then prepared his transcripts, which was the time-consuming part, uh, from copies? Your Honor, Agent Bridges had that understanding from his supervisor, and I believe there was at least one other agent that testified that that was their understanding as well. I'm not sure exactly where that understanding came from, but that, that seemed to be, you know, uh, uh, uh, uh, a mistake that, mistaken belief that was held not just by Agent Bridges, but by others about the recordings transcribed. That, that is clearly true, and the, and the magistrate judge found those were good faith, uh, honest beliefs, uh, but, uh, when, you know, when you think about it, he could make his copies, uh, in a, certainly within two days, and then prepare his transcripts, which is what took time, uh, from the copies. So, uh, his, uh, his belief has to be objectively reasonable, as the Supreme Court says. Uh, can we say it was objectively reasonable? Your Honor, I think because he didn't think about making it, because he didn't think about making it from the copies that he knew he could make. Your Honor, I think it is objectively reasonable here, because the record shows that Agent Bridges was relying on his understanding from his supervisor, um, and while, you know, that might have been incorrect, I think it's reasonable for Agent Bridges to have relied on, um, more experienced, um, agents, including supervisors, to provide him, you know, with information about how he was to go about, um, both sealing, but also making transcripts and copies of the, of the wiretaps. Those are obviously, um, areas where, uh, more experienced agents can provide insight here, um, either due to a mistake of his supervisor, or a misunderstanding, perhaps, of his supervisor. You know, Agent Bridges did think that those transcripts had to be made, and you're correct. The record shows that that is, that is what the time was spent on here. There was, you know, a sort of fast and furious effort to, within that 10 days, get these recordings transcribed, um, and... We know, we know that Dull, the agent at the computer center, uh, testified that he didn't tell, uh, he didn't say he didn't tell Bridges in particular, but he said he didn't tell anybody, any of the agents, uh, that there were not, would not be copies, uh, but was there any such testimony that Bridges said two people told him that, his supervisor and Dull? Was there any testimony that, uh, that belied his recollection that his supervisor told him? I don't believe there was any testimony that belied that his supervisor told him. You're correct that there was some inconsistency in the record about whether Dull told him or anyone that, um, but I don't believe there is any, um, I don't believe there's any testimony in the record, the large record. I don't believe there's any testimony that, uh, that, uh, belies that his supervisor, um, in fact... His supervisor, his supervisor was Posey. Did Posey testify? Um, your honor, I don't think that, I don't think that Posey testified in front of the magistrate court, but, um, I honestly would have to refresh my recollection about that. Yeah, okay, thank you. Could you, could you address the territoriality argument before you wrap up? Yes, your honor. Um, as we indicated in the brief, um, the listening post, uh, theory is really critically important here. Um, both this court and the Pierre case, which is an unpublished case, um, and the Supreme Court of Georgia have found that the listening post is a point of interception that should be considered, um, for this purpose. Um, and while, while this court has only considered the question in Pierre, it did come out that way, and every other circuit to consider the question has, um, has considered the listening post to be a point of interception. Um, the D.C. circuit, um, did, uh, address some of this concern about, um, sort of the open-endedness, um, of, of, of the listening post theory, um, and the D.C. circuit court, uh, said it well, and I'll quote, or attempt to quote, um, the alleged boundlessness of the listening post theory of which defendants complain stems from the statutory language, especially the definition of intercepts, um, which defendants do not try to parse. Moreover, whatever the force of the effect to which they point, they are opposing concerns. On defendants' view, government officials would be required to obtain wiretap order in every district where they could, where they thought a target could make calls. Such a scheme seems unworkable, and I think that, especially that point about unworkability, um, is particularly important here. Um, the listening post theory adopted by every circuit to consider the question, um, adopted by this court in an unpublished decision in here, um, and adopted by the Supreme Court of Georgia all tell us that the listening post is a point of intercept, and here there was a listening post, um, within the jurisdiction of court, so that, um, in the government's view answers the question here. To get the wiretap, I mean, didn't the, the agents have to show the probable cause to believe that a Georgia crime was being committed? I mean, isn't that the standard they had to meet? That's correct. To, to get it in the first, in the first place, that's what they, that's what they said. They couldn't get, even if it, I mean, even under this listening post theory, the agents couldn't tap someone's phone in California unless they could show probable cause to believe that person in California was violating a Georgia law. Am I understanding that right? I think that's right, and I think there could be, you know, sort of separate and different attacks on, you know, a situation where that might occur. I mean, specifically it being unauthorized for that reason rather than for the listening post reason. Okay. Okay, Ms. Burch, thank you very much. Thank you. Okay, Ms. Wade, you've got your five minutes of rebuttal. Thank you, Your Honor. I want to address a couple of questions, um, that Your Honor has posed to the appellee. First, to address the question of whether or not the district court made a finding about the access to these recordings at the time when the government purports that they were, in fact, sealed. The district court, on page four of its order, did, in fact, find that the government, during this time, did have access to those recordings. I think that's an important point when we consider that the purpose of the sealing requirement, as stated in the haterias, is to prevent the opportunity for tampering, not just actual tampering. Additionally, um, there was some other questions about where this standard, this 10 days, came from in the go-by, and the go-by that was attached to the government's response. And the district court was one that was from, um, Douglas County in 2010, which was still five years after the standard that was articulated by this court in Matthews. That all, the law had been five years old, even when it was last used, much less, you know, several years after that in this case. Um, at least another five years had gone by because it was a decade-old legal standard at that time. I think that's important to note. I would disagree that this is a common practice, that this 10 days was a common standard that was used in state court. I think it's fair to say that there was an inference based on the actions of the prosecutor and the judge in this case. I don't think there was other testimony about this being otherwise a common standard. And I do want to move on to another issue that the court focused on heavily during Apelli's argument, and that is the standard of objective reasonableness. And it needs to be stated that it is, in every case where this objective reasonableness standard has been addressed, it's almost always been on the question that's much more complicated, which is whether or not a new order is an extension of the prior order, whether or not it's a completely new wiretap order. And the circuit courts have been all over the place on that. And so almost always when that issue is addressed, it's because there has been either the circuit had not addressed it at all in the past, or there was a circuit split on the issue. And here we have a simple point of law. What does immediately mean? Where there was a working definition that was clearly established over a decade before the attempt to get the wiretap in this case. So this court should not find that this mistake about the also the fact that the agent acknowledged he didn't even read the statute. Had he read the statute, he would have been alerted to this mistake. He either missed or ignored this point in his training materials, which he was given, which we know had the one to two-day standard. And then there's this reliance on the fact that he gave these materials to the prosecutor. But because the prosecutor didn't testify, we have absolutely no evidence that even minimal legal research was done by that prosecutor. We don't know that he acted as a lawyer at all, because we know that the only thing that happened were some basic typos and spelling errors that were fixed. So with that complete lack of evidence as to whether or not he acted as a reasonably prudent attorney would have in that circumstance, then there is no reasonable reliance on him. There were failures from beginning to end of this effort to get these wiretaps and to execute them. And the district court looked at those failures and said, this is a very close case and explicitly was struggling with condoning all these procedural errors that just seemed to be one after another that occurred in this investigation. And that concern was absolutely warranted, because wiretaps are one of the most, if not the most intrusive investigative tactics that the government is allowed to employ. And Section 2518 provides very clear directions on how this technique can be used and how it can't be used. And in order for that statute to have any real meaning, the exclusionary provision has to be used when it's warranted. And here, the statute was violated and suppression was appropriate because the whole reason for the delay was a mistake that could have easily been fixed 10 different times along the way. And it's just not objectively reasonable. It does not meet the standard. And the court should have found the suppression was appropriate. All right. Thank you very much, Ms. Wade, Ms. Birch, Mr. Winchester, Mr. Harvey. We really appreciate the help.